1  Caitlin C. Blanche (SBN 254109)
   caitlin.blanche@klgates.com
2  Damon M. Pitt (SBN 291473)
   damon.pitt@klgates.com
3  K&L GATES LLP
   1 Park Plaza, Twelfth Floor
4  Irvine, CA  92614
   Telephone:(949) 253-0900
5  Facsimile: (949) 253-0902

6  George P. Barbatsuly
   george.barbatsuly@klgates.com
7  (Admitted *pro hac vice*)
   K&L GATES LLP
8  One Newark Center, Tenth Floor
   Newark, NJ 07102
9  Telephone:  (973) 848-4000
   Facsimile:  (973) 848-4001

10
   Attorneys for Defendant
11 CUSTOM S.P.A., an Italian corporation; and
   CUSTOM AMERICA, INC., a New Jersey corporation

12

13                UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15

16                      SOUTHERN DIVISION

17

18 | INFINITE PERIPHERALS, INC., an | Case No. 8:19-cv-01983-DOC-JDE
   | Illinois corporation,          |
19 |                                |
   |                                | **DEFENDANT CUSTOM S.P.A.,**
20 |            Plaintiff,          | **INC.'S MOTION TO DISMISS**
   |                                | **COMPLAINT PURSUANT TO**
   | vs.                            | **F.R.C.P. RULE  12(b)(2)**
21 |                                |
   | CUSTOM S.P.A., an Italian corporation; | Assigned to: Hon. David O. Carter
22 | CUSTOM AMERICA, INC., a New Jersey |
   | corporation; and VITALII PANCHENKO, | Date: March 2, 2020
23 | an individual,                 | Time: 8:30 am
   |                                | Courtroom: 9D
24 |                                |
   |            Defendants.         |
25

26

27

28

---

**DEFENDANT CUSTOM S.P.A.'S MOTION TO DISMISS COMPLAINT**
**CASE NO. 8:19-CV-01983-DOC-JDE**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.     INTRODUCTION ................................................................................. 1

II.    BACKGROUND ON CUSTOM AMERICA AND CUSTOM S.P.A. ............... 2

III.   ARGUMENT ...................................................................................... 4

  A.   This Court Lacks Personal Jurisdiction Over Custom S.P.A.
   Under Any Analysis ................................................................... 4

  B.   This Court Lacks General Jurisdiction Over Custom S.P.A. ................... 5

   1.   Plaintiff cannot establish the paradigmatic bases for
    general jurisdiction over Custom S.P.A. .......................... 6

   2.   Custom S.P.A. is not essentially "at home" in California .............. 7

   3.   Plaintiff cannot satisfy the alter ego test ......................... 8

  C.   This Court Lacks Specific Jurisdiction Over Custom S.P.A. .................. 9

   1.   Plaintiff fails to plead facts sufficient to establish that
    Custom S.P.A. purposefully directed its activities or
    purposefully availed itself of the benefits afforded by
    California's laws ................................................... 10

   2.   Plaintiff has not pled sufficient facts showing that its
    claims arise out of or relate to the Custom S.P.A.'s
    contacts with California .......................................... 13

   3.   Exercising personal jurisdiction over Custom S.P.A.
    would violate notions of fair play and substantial justice ........... 14

   4.   An agency relationship does not exist between Custom
    America and Custom S.P.A. ....................................... 15

  D.   This Court Should Deny Any Request by Plaintiff for
   Jurisdictional Discovery ............................................................. 16

IV.    CONCLUSION ................................................................................ 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ballard v. Savage,*
    65 F.3d 1495 (9th Cir. 1995) ................................................................. 13

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008) ......................................................... 9, 13

*Bristol-Myers Squibb Co. v. Super. Ct.,*
    137 S.Ct. 1773 (2017) .................................................................. 4, 8, 9

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ................................................................... 13, 14

*Calder v. Jones,*
    465 U.S. 783 (1984) ......................................................................... 10

*CollegeSource, Inc. v. AcademyOne,*
    Inc., 653 F.3d 1066, 1077 (9th Cir. 2011) .................................... *passim*

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) ..................................................................... *passim*

*Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.,*
    907 F.2d 911 (9th Cir. 1990) ............................................................... 9

*Goodyear Dunlop Tires Operation, S.A. v. Brown,*
    564 U.S. 918 (2011) .................................................................... 3, 4, 7

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) .................................................................... 5, 6, 7

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ......................................................................... 3, 7

*Martinez v. Aero Caribbean,*
    764 F.3d 1062 (9th Cir. 2014) ........................................................... 4, 6

*Marvix Photo, Inc. v. Brand Techs., Inc.*
    647 F.3d 1218 (9th Cir. 2011) ............................................................. 9

ii

*Mattel, Inc. v. Greinerand Hausser GmbH,*
    354 F.3d 857 (9th Cir. 2003) ............................................................................. 13

*Pebble Beach Co. v. Caddy,*
    435 F.3d 1151 (9th Cir. 2006) ................................................................ 4, 15, 16

*Ranza v. Nike, Inc.,*
    793 F.3d at 1059, 1069 ............................................................................*passim*

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.,*
    99 Cal. App. 4th 228 (2002) ............................................................................ 8

*Walden v. Fiore,*
    571 U.S. 277 (2014).................................................................................*passim*

*Wells Fargo & Co. v. Wells Fargo Express Co.,*
    556 F.2d 406 (9th Cir. 1977) .......................................................................... 15

*Williams v. Yamaha Motor Co. Ltd.*
    851 F.3d 1015 (9th Cir. 2017) ..................................................................*passim*

**Statutes**

Cal. Code Civ. Proc. § 410.10 ................................................................................ 3

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(2)....................................................... 1

iii

Defendant Custom S.P.A. ("Defendant" or "Custom S.P.A.") makes the following Motion to Dismiss all causes of action alleged in the Complaint filed by Plaintiff Infinite Peripherals, Inc. ("Plaintiff") for lack of personal jurisdiction according to Rule 12(b)(2) of the Federal Rules of Civil Procedure ("Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Fundamentally, this case arises from a dispute between Plaintiff (an Illinois company) and Custom America, Inc. (a New Jersey Company). This case's only connection to the State of California is Defendant Vitalii Panchenko, who is a resident of the State. The entire Complaint and each cause of action alleged against Custom S.P.A. stems from Custom America, Inc.'s ("Custom America") hiring and employment of Mr. Panchenko, a former employee of Plaintiff, and Custom America's alleged theft of trade secrets as a result of hiring him. Notably, Mr. Panhenko, while residing, personally, in California, oversaw a region for Custom America that did not even include California. Despite this, Plaintiff has also named Custom S.P.A. as a defendant. Custom S.P.A., however, is an Italian company with its principal place of business in Parma, Italy, without any meaningful contact with California. As set forth herein, this Court lacks personal jurisdiction over Custom S.P.A., and the heavy weight of clear authority supports dismissal pursuant to Fed. R. Civ. P. 12(b)(2).

Simply put, there is no basis for this Court to exercise general or specific jurisdiction over Custom S.P.A. It is undisputed that Custom S.P.A. is not incorporated in California. It is also undisputed that Custom S.P.A.'s principal place of business is not in California. Custom S.P.A. is not otherwise "at home" in California such that this Court could exercise general jurisdiction over Custom S.P.A. There is also no basis for specific jurisdiction. Since its formation, Custom America has sold its printing products directly to Plaintiff, acting as its distributor, without any involvement from Custom S.P.A. After the formation of Custom America, Custom

1

S.P.A. did not interact or have any contact with Plaintiff.  Custom S.P.A. had no role, influence, or involvement in the hiring, employment, or management of Mr. Panchenko.  As such, Custom S.P.A. does not have sufficient minimum contacts with California, and the claims asserted by Plaintiff do not arise out of Custom S.P.A.'s contacts with California.  In sum, there is no basis for this Court to exercise jurisdiction over Custom S.P.A., and, pursuant to the plentiful authority on such matters, this Court should dismiss Custom S.P.A. from this action.

## II.  BACKGROUND ON CUSTOM AMERICA AND CUSTOM S.P.A.

### A.  This Action Arises from Plaintiff's Business Relationship with Custom America, Not Custom S.P.A.

Custom America is a hi-tech solution company specializing in printing machines and equipment, among other products, comprising point of sale systems for various types of retail and enterprise markets.  It is a fully independent subsidiary of Custom S.P.A., an Italian corporation with its principal place of business in Parma, Italy.  (*See*, Exhibit "A", Declaration of Nicola Ciarlante ["Ciarlante Decl."], ¶ 2; *See also*, Exhibit "B", Declaration of Rosanna Sarcina ["Sarcina Decl."], ¶ 2.)

Plaintiff manufactures and supplies printing devices and barcode scanners.  *See* Complaint ¶ 2. Over twenty years ago, Custom S.P.A. began using Plaintiff as a distributor of Custom S.P.A. products in North America.  *Id*. at ¶ 12.  In 2011, Custom America was formed as an independent entity intended to establish a permanent foothold in the American markets.  (Sarcina Decl., ¶ 3.)  From then on, Custom America developed and oversaw North American distribution without oversight from Custom S.P.A.  Vitalii Panchenko, who lives in Orange County, California, was Plaintiff's employee, in its sales division from approximately 2015 to 2018.  Custom America hired Vitalii Panchenko into its sales division in 2018.  Complaint at ¶ 18, 26.  The claims allegedly giving rise to this lawsuit stem from Vitalii Panchenko's hiring and handling of certain information during his transition from Plaintiff to Custom America.

2

Custom S.P.A. has had no dealings with Mr. Panchenko, the decision to hire him, or manage him as an employee of Custom America. (Ciarlante Decl., ¶¶ 6–7.)

**B.** **Custom S.P.A. is a Separate Entity from Custom America, with No Relevant Contact with the Forum State**

Custom S.P.A. has no partners or customers in California.  At all times relevant to this case, Custom S.P.A. has not and does not solicit, negotiate with, or contract with any customers in California.  (Sarcina Decl., ¶ 6.)  Custom S.P.A. does not decide which products or markets to develop and/or pursue in the United States.  Custom America has sole discretion in determining which of Custom S.P.A.'s global product lines (which Custom S.P.A. develops and manufactures independently of Custom America) to bring to market in the United States.  (Ciarlante Decl., ¶ 3; Sarcina Dec., ¶ 9.)  To the extent Custom S.P.A. provides local support to Custom America in the United States (engineering services, product development, etc.), Custom America pays Custom S.P.A. for its services.  (Ciarlante Decl., ¶ 4.)

Custom S.P.A. owns approximately 90% of Custom America, which was formed in 2011 for the purposes of permanently establishing a presence and independent sales channels in the United States, which it has done.  (Sarcina Decl., ¶ 3.)  Custom America, at the discretion of its own leadership, decides upon and issues dividends to its shareholders.  Custom America is self-funded through its own operations and functions as a completely independent entity, with its own bylaws and independent books. (Ciarlante Decl., ¶ 5.)

Custom S.P.A. does not pay any of Custom America's employees and does not exercise any authority over Custom America's employment decisions, including recruiting, hiring, compensation, management, retention, or termination. As such, Custom S.P.A. had no role in the recruitment, hiring, compensation, or retention of Mr. Panchenko.  (Ciarlante Decl., ¶¶ 6–7.)  Furthermore, Mr. Panchenko, though personally domiciled in California, did not manage or cover a territory for Custom America that even included California.  (Ciarlente Decl., ¶ 8.)

In addition, Custom S.P.A. does not conduct any banking in California, and it is not liable for any of Custom America's debts.  (Sarcina Decl., ¶ 4.)   To the extent Custom S.P.A. products may have entered California through the stream of commerce, Custom S.P.A. had no involvement in the decision-making process that resulted in any of those global products landing in California.  (Sarcina Decl., ¶ 7.)

## III.   ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over Custom S.P.A. Under Any Analysis

California's long-arm statute permits a California court to exercise personal jurisdiction over a non-resident defendant to the extent it is permitted by the Constitution.  Cal. Code Civ. Proc. § 410.10.  Since asserting jurisdiction over a defendant exposes the defendant "to the State's coercive power, [it] is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 918 (2011); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Due Process "requires that a defendant have such minimum contacts with the forum state that maintenance of the suit does not offend traditional notion of fair play and substantial justice."  *Int'l Shoe*, 326 U.S. at 316 (internal quotations omitted).  "The primary focus of [the] personal jurisdiction inquiry is the defendant's relationship to the forum State."  *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S.Ct. 1773, 1779 (2017).

It is well settled that a court may exercise two types of personal jurisdiction: general and specific.  *Bristol-Myers Squibb*, at 1780.  Regardless of the type of jurisdiction evoked, "the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 435 F.3d 1151, 1154 (9th Cir. 2006).  Although factual disputes are resolved in the plaintiff's favor, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *CollegeSource, Inc. v. AcademyOne*, Inc., 653 F.3d 1066, 1077 (9th Cir. 2011); *Pebble*

*Beach*, 435 F.3d at 1154.  Here, Plaintiff cannot demonstrate that this Court has personal jurisdiction over Custom S.P.A.

## B. <u>This Court Lacks General Jurisdiction Over Custom S.P.A.</u>

The primary test for general jurisdiction over a corporation is whether the corporation is "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919.  For a corporation, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137.  "Only in an exceptional case will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014); *Daimler*, 571 U.S. at 139, n. 19 (stating that an "exceptional case" is when "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State."); *see Ranza v. Nike, Inc.*, 793 F.3d at 1059, 1069 ("[A] plaintiff invoking general jurisdiction must meet an 'exacting standard' for the minimum contacts required.")

One Supreme Court case, in particular, specifically highlights the difficulty of establishing general jurisdiction when, as here, a defendant corporation is not incorporated or principally doing business in the forum state.  In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984), the court ruled that a Texas court had no general jurisdiction over a Colombian corporation.  The Colombian corporation was not incorporated in Texas and had no place of business there.  *Id.* at 416.  The corporation's "contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas company] for substantial sums; and sending personnel

5

to [the Texas company's] facilities in Fort Worth for training." *Id.* Even such ties to Texas   did not amount to "the kind of continuous and systematic general business contracts" that allow a state to exercise general jurisdiction over a foreign corporation that is not incorporated and has no place of business in the forum state. *Id.*

A final test for general jurisdiction arises in the context of a parent corporation and subsidiary.  A plaintiff may seek to use the contacts of a subsidiary to "impute" general jurisdiction to a foreign parent corporation.  *See Ranza*, 793 F.3d 1059, 1071; *Williams v. Yamaha Motor Co. Ltd*. 851 F.3d 1015, 1021 (9th Cir. 2017).  However, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070.  In other words, **a parent-subsidiary relationship "does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other."**  *Williams*, 851 F.3d 1015 (emphasis added).  Rather, under the "alter ego test[1]," a plaintiff "must make out a *prima facie* case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* at 1021 (internal quotation marks omitted).  Here, Plaintiff fails to allege any bases that would support the exercise of general jurisdiction over Custom S.P.A. under any theory.

### 1. Plaintiff cannot establish the paradigmatic bases for general jurisdiction over Custom S.P.A.

Plaintiff admits in the Complaint that Custom S.P.A. is not "at home" in California.  *See* Complaint ¶ 3.  Custom S.P.A. is an Italian corporation with its principal place of business in Parma, Italy.  Custom S.P.A. is **not** a California corporation, and

---

[1]   The Supreme Court, in *Daimler*, invalidated the "agency test" previously used by the Ninth Circuit to impute local entity contacts to out-of-state affiliates for the purpose of general jurisdiction.  *See Daimler*, 571 U.S. at 135–36.

its principal place of business is **not** located in California.  As such, general jurisdiction cannot be established under the paradigmatic bases.  *See Daimler*, 571 U.S. at 137.

### 2.  Custom S.P.A. is not essentially "at home" in California

Failure to establish general jurisdiction under the paradigmatic bases means that Plaintiff must plead facts demonstrating that Custom S.P.A.'s activities in California are so "continuous and systematic" as to "render [Custom S.P.A.] essentially at home in [California.]"  *Id; CollegeSource*, 653 F.3d at 1075 ("To determine whether a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, we consider their longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets.") (internal quotation marks omitted).

Here, Plaintiff cannot meet this "exacting standard" because this is not an "exceptional case."  *Ranza*, 793 F.3d at 1069; *Martinez*, 764 F.3d at 1070.  Put simply, the Supreme Court's reasoning in *Helicopteros* mandates the same result here.  Compared to Plaintiff, the plaintiff in *Helicopteros* pled significantly *more* facts showing the respective defendant's contacts with the forum state and *still* failed to meet the exacting standard.  Where the plaintiff in that case failed to establish general jurisdiction, so does Plaintiff in this case.

For example, Custom S.P.A.'s activities with California are not substantial, continuous, or systematic.  Custom S.P.A. is not registered to do business in California; has no registered agent for service of process; has no offices or employees in California; and pays no California state taxes.  (Sarcina Decl., ¶ 5.)  *See, e.g., CollegeSource*, 653 F.3d at 1075; *Goodyear,* 564 U.S. at 921*; Helicopteros,* 466 U.S. at 411.  Custom S.P.A. has no partners or customers in California.  Custom S.P.A. does not solicit, negotiate with, or contract with any customers in California.  (Sarcina Decl., ¶ 6.)  Even if any California sales or business activity existed (which Plaintiff fails to allege) such sales or activities must be compared to Custom S.P.A.'s sales and business activity worldwide.  *Daimler*, 134 S.Ct. at 761–762, n. 20. ("General jurisdiction instead calls

7

for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them."). Furthermore, Custom S.P.A. engaged no employees and conducted no banking in California, and had no involvement in the decision-making process that resulted in any of its global products landing in California. (Sarcina Decl., ¶ 7.)

Contrasted with its extensive global sales, Custom S.P.A.'s non-existent activities in California cannot render it "at home" there. Even if Custom S.P.A. had business contacts that were "in some sense continuous and systematic" in California (again, which Plaintiff fails to allege and which do not exist), those contacts would not be enough to establish general jurisdiction. *Daimler*, 571 U.S. at 138–39; *Int'l Shoe*, 326 U.S. at 318 (A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."). Accordingly, Custom S.P.A. is not "at home" in California.

### 3. Plaintiff cannot satisfy the alter ego test

There is no basis to impute Custom America's contacts with California to Custom S.P.A. for jurisdictional purposes, because Plaintiff cannot satisfy the alter ego test. *See Ranza*, 793 F.3d 1059, 1071; *Williams*, 851 F.3d at 1021. The alter ego test "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation. *Ranza*, 793 F.3d at 1073 (internal quotation marks and citations omitted).

Here, Plaintiff pleads *no* facts regarding the nature of the parent-subsidiary relationship generally, let alone facts sufficient to satisfy the alter ego test. Plaintiff presents no evidence indicating that Custom S.P.A. and Custom America fail to observe their respective corporate formalities. *See Ranza*, 793 F.3d 1059 at 1074; *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) (listing factors courts consider when assessing the "unity of interest" prong). Both companies maintain their own facilities, hire their own employees, and enter into contracts on their own. As

noted, Custom America is self-funded through its own operations and functions as a completely independent entity, with its own bylaws and independent books. (Ciarlante Decl., ¶ 5.) While Custom S.P.A. owns 90% of Custom America and the two entities share common board members, Custom S.P.A. does not commingle funds or other assets with Custom America, and Custom S.P.A. is not liable for Custom America debts. (Sarcina Decl., ¶¶ 3–4.) Most importantly, Custom America carries on its own business in the United States independent of day-to-day control by Custom S.P.A. Accordingly, Plaintiff fails to show that Custom S.P.A. "dictates every facet of [Custom America's] business" and it is therefore indisputable that the Court lacks general jurisdiction over Custom S.P.A. *Ranza*, 793 F.3d 1059 at 1074.

## C. This Court Lacks Specific Jurisdiction Over Custom S.P.A.

As the Court well knows, specific jurisdiction requires that "the suit . . . arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 137 S.Ct. at 1780. To satisfy due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). For personal jurisdiction to exist, each plaintiff must establish a "connection" between its claims, the defendant(s), and the forum state. *Bristol-Myers Squibb*, 137 S.Ct. at 1781. The connection "must arise out of contacts that the 'defendant himself' creates with the forum State" and "not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284. The primary concern in determining whether a court can exercise specific jurisdiction over a claim is "the burden on the defendant." *Bristol-Myers Squibb*, 137 S.Ct. at 1780.

The Ninth Circuit applies a three-part test to determine whether a court may exercise specific jurisdiction over a non-resident defendant: "(1) the defendant either purposefully directs its activities or purposefully avails itself of the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial

9

justice, *i.e.*, it is reasonable." *Williams*, 851 F.3d at 1023 (internal quotation marks and alteration omitted).

The plaintiff must first prove prongs one *and* two. *Marvix Photo, Inc. v. Brand Techs., Inc.* 647 F.3d 1218, 1227–28 (9th Cir. 2011). If the plaintiff meets its burden on both prongs, the burden then shifts to the defendant to make a "'compelling case' that the exercise of personal jurisdiction would be unreasonable." *Id.* If the plaintiff fails on prongs one *or* two, "the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). For the purposes of specific jurisdiction, "only contacts occurring prior to the event causing the litigation may be considered." *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

Lastly, the Ninth Circuit has stated that some standard of an agency relationship may be relevant to establish specific jurisdiction. *Williams*, 851 F.3d at 1024; *Daimler*, 571 U.S. at 135, n.13 ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."). To establish specific jurisdiction under an agency theory, the plaintiff must make a *prima facie* case that an agency relationship exists.

Here, Plaintiff fails to prove the required prongs under the Ninth Circuit test and fails to make a *prima facie* case that an agency relationship exists between Custom S.P.A. and Custom America.

### 1. Plaintiff fails to plead facts sufficient to establish that Custom S.P.A. purposefully directed its activities or purposefully availed itself of the benefits afforded by California's laws

For suits sounding in tort, the court will "typically inquire whether a defendant 'purposefully directs his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *CollegeSource*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme,* 433 F.3d 1199, 1206 (9th

Cir.2006) (*en banc*).  The effects test "requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."  *Id.*; *See Calder v. Jones,* 465 U.S. 783 (1984) (internal quotation marks omitted).

Here, Plaintiff fails to plead any facts demonstrating that Custom S.P.A. committed an intentional act, expressly aimed at California, causing harm that Custom S.P.A. knew Plaintiff would likely suffer in California.  Foremost, the Complaint is devoid of facts showing that Custom S.P.A. "purposefully reached out beyond [Italy] and into [California]" to cause harm to Plaintiff in California. *Walden*, 571 U.S. at 285.

Plaintiff's only factual allegations connecting Custom S.P.A., California, and Plaintiff's pled causes of action are the vague and conclusory allegations that (1) "Custom [S.P.A.] . . . did business in the State of California, County of Orange, through Panchenko acting as their Territory Account Manager" and (2) "Custom [S.P.A.] . . . through Panchenko continues to use Infinite's customer information and pricing data to solicit Infinite's current and prospective customers."  Complaint ¶¶ 6, 29.  These allegations are both factually incorrect and insufficient to establish that Custom S.P.A. "expressly aimed" any business activity at California that it knew could harm Plaintiff in California.

First, Mr. Panchenko, though personally domiciled in California, did not manage or cover any territory as a "Territory Account Manager" for Custom America that even included California. (Ciarlente Decl., ¶ 8.)  As such, it is impossible that Custom S.P.A. did business in California through Mr. Panchenko.  Where his territory did not even include the State of California, it is a stretch to allege that even Custom America did business in California "through" Mr. Panchenko as the Complaint alleges.

Second, Custom S.P.A. does not exercise any authority over custom America's employment decisions. (Ciarlente Decl., ¶ 6.)  As such, Custom S.P.A. played no role in recruiting, hiring, or employing Mr. Panchenko—the only connection this case has to California. (Ciarlente Decl., ¶ 7.)  Custom S.P.A. never communicated with Mr.

11

Panchenko regarding *any* matter, let alone matters as they relate to California and this litigation. (Sarcina Decl., ¶ 8.) Custom S.P.A. does not dictate Custom America's hiring policies, determine customer lists, or assist Custom America in finding new clients. (Ciarlante Decl., ¶¶ 6, 9.) Moreover, without more, any alleged connection between Custom S.P.A. and Panchenko, even if true, is insufficient to establish specific jurisdiction over Custom S.P.A. *Walden*, 571 U.S. at 285 (stating that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").

Third, Custom S.P.A. ended its direct business relationship with Plaintiff in 2003. *See* Complaint ¶¶ 12, 13. Since 2011, Custom America acted as Plaintiff's point of contact in the United States and Custom S.P.A. had no further contact with Plaintiff. Even if Custom S.P.A. and Plaintiff remained in contact, Plaintiff is an Illinois corporation with its principal place of business in Illinois. Plaintiff's only pled connection to the State of California is through Mr. Pachenko's residency in the State. As such, any alleged action taken by Custom S.P.A. against Plaintiff could not be "expressly aimed" at California. Further, Plaintiff pleads no facts indicating that any of the customers Custom S.P.A. allegedly solicited had any connection to California. *See* Complaint ¶¶ 28–29. Even if Plaintiff pled such facts, Custom S.P.A. did not directly contact any of Plaintiff's customers in California. This is further proof that Custom S.P.A. has no jurisdictionally relevant connection to California or Plaintiff as it relates to this litigation.

Fourth, Plaintiff claims the alleged solicitation came in the form of a letter sent to Plaintiff's current and prospective customers. *See* Complaint ¶ 28. The letter, however, is signed by Nicola Ciarlante, the CEO of Custom America, on Custom America letterhead, with Custom America contact information listed at the bottom. Mr. Ciarlante has exclusive authority on behalf of Custom America to determine which customers and/or markets in the United States to target, solicit, or develop, including where to sell to customers. (Ciarlante Decl., ¶¶ 3, 9; Sarcina Decl., ¶ 9.) In short,

Custom S.P.A. does not decide which products or markets to develop and/or pursue in the United States.  (Sarcina Decl., ¶¶ 3, 9; Sarcina Decl., ¶ 9.)  Notably, the letter cited in the Complaint makes no reference, at all, to Custom S.P.A., and this only reinforces Custom S.P.A.'s position.  Plaintiff also fails to plead any facts showing the alleged solicitation letter reached any of Plaintiff's customers in California.  Even if Custom S.P.A. was connected to this letter in any way, Plaintiff fails to show that Custom S.P.A. "expressly aimed" the letter at California.  As such, the letter cannot demonstrate that Custom S.P.A., in any way, performed an intentional act expressly aimed at California.  Plaintiff's allegations, therefore, are devoid of facts demonstrating Custom S.P.A. committed an intentional act expressly aimed at California.  *CollegeSource*, 653 F.3d at 1077.

Finally, Plaintiff pleads no facts indicating that it was harmed by Custom S.P.A. in California.  Even if Custom S.P.A. injured Plaintiff in some way, mere injury to Plaintiff is not a sufficient connection to California such that California has specific jurisdiction over Custom S.P.A.  *Walden*, 571 U.S. at 290 ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").  Accordingly, Plaintiff cannot meet its burden and all claims against Custom S.P.A. must be dismissed for lack of personal jurisdiction.  *Boschetto*, 539 F.3d at 1016.

### 2. Plaintiff has not pled sufficient facts showing that its claims arise out of or relate to the Custom S.P.A.'s contacts with California

A court may exercise specific jurisdiction only "where a corporation's in-state activities are not only 'continuous and systematic, but also give rise to the liabilities sued on.'" *Daimler*, 571 U.S. at 138 (quoting *Int'l Shoe*, 326 U.S. at 317).  The Ninth Circuit utilizes a "but for" test to determine whether the claims arise out of defendant's contacts with the forum.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  To satisfy this prong, a plaintiff must show that it would not have been injured "but for"

the defendant's conduct directed toward the forum state.  *See Mattel, Inc. v. Greinerand Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003).

Here, Plaintiff cannot satisfy the "but for" test.  Plaintiff fails to plead facts showing that any of Plaintiff's claims "arise out of" or "relate to" activities of Custom S.P.A. *in* California.  In fact, the Complaint is devoid of any allegations regarding Custom S.P.A's business activities in California.  Omission of such critical facts tellingly demonstrates Plaintiff's failure to meet its burden under this prong. Accordingly, the Court lacks specific jurisdiction over Custom S.P.A.

### 3. Exercising personal jurisdiction over Custom S.P.A. would violate notions of fair play and substantial justice

As set forth above, Plaintiff fails to meet its burden under prongs (1) and (2) of the Ninth Circuit's specific jurisdiction analysis, and so this Court's analysis should stop here.  Should this Court somehow determine, however, that Plaintiff has met its burden under prongs (1) and (2), the exercise of specific jurisdiction over Custom S.P.A. would certainly not comport with the concepts of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

In *Burger King*, the court discussed factors to consider here, which include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) plaintiffs' interests in obtaining convenient and effective relief; (4) the court's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

Here, every factor weighs against the Court exercising specific jurisdiction over Custom S.P.A.  First, as set forth extensively above, Custom S.P.A. is not "at home" in California and the Complaint does not contain any facts connecting Custom S.P.A. to any relevant business conducted in California.  It would, therefore, impart a substantial burden upon Custom S.P.A. to defend this action from Italy despite no jurisdictionally

relevant contact with the State of California.[2]  Second, the Complaint is devoid of any facts suggesting the State of California has a legitimate concern for adjudicating the claims against an Italian corporation not connected to California in any meaningful way as it relates to this litigation.  Third, there is no evidence indicating Plaintiff is seeking convenient and effective relief by naming Custom S.P.A. in the Complaint.  Custom America's presence in the lawsuit is sufficient to obtain any requested relief by Plaintiff, and Custom S.P.A.'s presence serves no function.  Fourth, efficient resolution of this matter is best achieved by dismissing all claims against Custom S.P.A.  Dismissal of Custom S.P.A. streamlines this matter and focuses the litigation on the only relevant parties.  Finally, no facts suggest a shared interest between Italy and California in furthering any fundamental social policies that may be at issue in this litigation.  Therefore, the exercise of specific jurisdiction over Custom S.P.A. would violate notions of fair play and substantial justice.

/ / /

### 4. An agency relationship does not exist between Custom America and Custom S.P.A.

The fundamental test for an agency relationship requires that an agent "act on the principal's behalf and subject to the principal's control." *Williams*, 851 F.3d at 1024 (quoting Restatement (Third) Of Agency § 1.01 (2006)).  An agency relationship exists between a parent company and its subsidiary when "the parent company [has] the right to substantially control its subsidiary's activities." *Id.*  Here, beyond the blanket statement that "Custom America is Custom [S.P.A.]'s subsidiary in the United States," Plaintiff fails to allege or plead any facts showing that Custom S.P.A. has the right to control Custom America's activities in any way.  Certainly, the Complaint provides no

---

[2] This point is further accentuated by the fact that (even by Plaintiff's counsel's most generous estimate when asked by the Court on January 6, 2020) a *maximum* sum of $1,000,000 is alleged to be at stake.  Defendant vehemently disputes even a scale such as this and asserts that the case, at its very best, is worth less than the cost for all counsel to travel to Italy to take a single deposition.

facts to contradict the evidence submitted with this Motion that Custom S.P.A. does not direct Custom America's operations in the United States and, in fact, Custom America independently makes all relevant decisions as to its business operations in North America and, specifically, California.  (Ciarlante Decl., ¶¶ 2–3, 6, 9; Sarcina Decl., ¶¶ 6–7, 9.)

### D. This Court Should Deny Any Request by Plaintiff for Jurisdictional Discovery

The Court should deny any requests for jurisdictional discovery. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977). ("A refusal to grant discovery is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.").  "Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160 (internal quotations omitted).

Here, as demonstrably proven on every point, Plaintiff's claims against Custom S.P.A. are attenuated and based on bare allegations. *Id.*  Plaintiff fails to meet its burden to demonstrate that this Court has personal jurisdiction over Custom S.P.A.  Plaintiff only offers conclusory allegations devoid of facts even remotely connecting Custom S.P.A. to California.  Importantly, Custom S.P.A. has specifically denied Plaintiff's vague factual allegations at every turn. *See Id.*  Therefore, this Court need not permit any jurisdictional discovery, as doing so would waste judicial resources and create an unnecessary delay in the efficient resolution of this matter.

## IV. CONCLUSION

For these reasons, Custom S.P.A. respectfully requests that the Court grant its Motion to Dismiss Custom S.P.A. in its entirety.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K&L GATES LLP

Dated:  January 29, 2020

By:  */s/ Caitlin Blanche*
    Caitlin C. Blanche
    Damon M. Pitt
    George P. Barbatsuly (*pro hac vice*)

    Attorneys for Defendant
    CUSTOM AMERICA, INC.

**DEFENDANT CUSTOM S.P.A.'S MOTION TO DISMISS COMPLAINT**
**CASE NO. 8:19-CV-01983-DOC-JDE**

## CERTIFICATE OF SERVICE

Case Name: Infinite Peripherals, Inc. v. Custom S.P.A., et al.
Case No.: 8:19-cv-01983-DOC-JDE

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 1 Park Plaza, Twelfth Floor, Irvine, CA 92614.  I am not a party to the above entitled action.I have caused service of the following documents, described as:

DEFENDANT CUSTOM S.P.A, INC.'S MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. RULE 12(b)(2)

on the following parties by electronically filing the foregoing on January 29, 2020, with the Clerk of the District Court using its ECF System, which electronically notifies them:

Ricardo P. Cestero
rcestero@greenbergglusker.com
Lori L. Werderitch
lwerderitch@greenbergglusker.com
GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, Suite 2100
Los Angeles, CA 90067-4590

Michael M. Ahmadshahi, PhD, Esq.
mahmadshahi@mmaiplaw.com
AHMADSHAHI LAW OFFICES
Wells Fargo Tower
2030 Main Street, Ste. 1300
Irvine, CA 92614

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Date:   January 29, 2020   *By:*  */s/ Caitlin Blanche*
Caitlin Blanche

18

# EXHIBIT A

1  Caitlin C. Blanche (SBN 254109)
   caitlin.blanche@klgates.com
2  Damon M. Pitt (SBN 291473)
   damon.pitt@klgates.com
3  K&L GATES LLP
   1 Park Plaza Twelfth Floor
4  Irvine, CA  92614
   Telephone: +1 949 253 0900
5  Facsimile: +1 949 253 0902

6  George P. Barbatsuly
   george.barbatsuly@klgates.com
7  (Admitted *pro hac vice*)
   K&L GATES LLP
8  One Newark Center, Tenth Floor
   Newark, NJ 07102
9  Tel:  (973) 848-4000
   Fax: (973) 848-4001
10

11 Attorneys for Defendant
   CUSTOM S.P.A., an Italian corporation;
12 and CUSTOM AMERICA, INC., a New
   Jersey corporation
13
                UNITED STATES DISTRICT COURT
14
               CENTRAL DISTRICT OF CALIFORNIA
15
                      SOUTHERN DIVISION
16

17

18                                    | Case No. 8:19-cv-01983-DOC-JDE
   INFINITE PERIPHERALS, INC., an
19 Illinois corporation,
                                      | **DECLARATION OF NICOLA
20              Plaintiff,            | CIARLANTE IN SUPPORT OF
                                      | DEFENDANT CUSTOM S.P.A,
21 vs.                               | INC.'S MOTION TO DISMISS
                                      | COMPLAINT PURSUANT TO
22 CUSTOM S.P.A., an Italian corporation; | F.R.C.P. RULE  12(b)(2)
   CUSTOM AMERICA, INC., a New Jersey
23 corporation; and VITALII PANCHENKO, | Assigned to: Hon. David O. Carter
   an individual,
24                                    | Date:
                                      | Time:
25              Defendants.           | Courtroom: 9D
26
27
28
                              **1**
          DECLARATION OF NICOLA CIARLANTE
          CASE NO. 8:19-CV-01983-DOC-JDE

I, Nicola Ciarlante, declare as follows:

1.   I am the CEO of Custom America, Inc. ("Custom America").  I know the following to be true of my own knowledge and, if called to testify, could and would competently do so.

2.   Custom America a fully independent subsidiary of Custom S.P.A.

3.   Custom America has sole discretion to determine which of Custom S.P.A.'s global product lines (which Custom S.P.A. develops and manufactures independently of Custom America) to bring to market in the United States.

4.   To the extent Custom S.P.A. provides local support to Custom America in the United States (engineering services, product development, etc.), Custom America pays Custom S.P.A. for its services.

5.   Custom America, at the discretion of its own leadership, decides upon and issues dividends to its shareholders.  Custom America is self-funded through its own operations and functions as a completely independent entity, with its own bylaws and independent books.

6.   Custom S.P.A. does not pay any of Custom America's employees and does not exercise any authority over Custom America's employment decisions, including recruiting, hiring, compensation, management, retention, or termination.

7.   Custom S.P.A. had no role in the recruitment, hiring, compensation, supervision, or retention of Vitalii Panchenko.  Custom America hired Mr. Panchenko in November 2018 and, during his employment, exclusively supervised Mr. Panchenko.

8.   Mr. Panchenko, though personally domiciled in California, did not manage or cover any territory as a "Territory Account Manager" for Custom America that included California.

9.   Custom S.P.A. does not determine customer lists for Custom America, assist Custom America in finding new clients, and Custom America independently makes all relevant decisions as to its business operations in North America and, specifically, California.

**2**

1

2        I declare under penalty of perjury under the laws of the United States of

3   America that the foregoing is true and correct.

4

5        Executed the $\underline{28}$ day of January, 2020.

6

7

8                                        By: _____

9                                             NICOLA CIARLANTE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                      **CERTIFICATE OF SERVICE**

28

**3**

**DECLARATION OF NICOLA CIARLANTE**
**CASE NO. 8:19-CV-01983-DOC-JDE**

EXHIBIT B

1  Caitlin C. Blanche (SBN 254109)
   caitlin.blanche@klgates.com
2  Damon M. Pitt (SBN 291473)
   damon.pitt@klgates.com
3  K&L GATES LLP
   1 Park Plaza, Twelfth Floor
4  Irvine, CA  92614
   Telephone:(949) 253-0900
5  Facsimile: (949) 253-0902

6  George P. Barbatsuly
   george.barbatsuly@klgates.com
7  (Admitted *pro hac vice*)
   K&L GATES LLP
8  One Newark Center, Tenth Floor
   Newark, NJ 07102
9  Tel:  (973) 848-4000
   Fax: (973) 848-4001
10
   Attorneys for Defendant
11 CUSTOM S.P.A., an Italian corporation; and
   CUSTOM AMERICA, INC., a New Jersey corporation
12

13                UNITED STATES DISTRICT COURT
14                CENTRAL DISTRICT OF CALIFORNIA
15
16                      SOUTHERN DIVISION
17
                                          | Case No. 8:19-cv-01983-DOC-JDE
18 INFINITE PERIPHERALS, INC., an
   Illinois corporation,
19                                        | **DECLARATION OF ROSANNA**
                                          | **SARCINA IN SUPPORT OF**
20             Plaintiff,                 | **DEFENDANT CUSTOM S.P.A,**
                                          | **INC.'S MOTION TO DISMISS**
21 vs.                                    | **COMPLAINT PURSUANT TO**
                                          | **F.R.C.P. RULE  12(b)(2)**
22 CUSTOM S.P.A., an Italian corporation;
   CUSTOM AMERICA, INC., a New Jersey  | Assigned to: Hon. David O. Carter
23 corporation; and VITALII PANCHENKO,
   an individual,                        | Date:
24                                        | Time:
              Defendants.                 | Courtroom: 9D
25
26
27
28
                                 **1**
                     DECLARATION OF ROSANNA SARCINA
                     CASE NO. 8:19-CV-01983-DOC-JDE

1      I, Rosanna Sarcina, declare as follows:

2      1.    I am the General Legal Counsel of Custom S.P.A.  I know the following

3 to be true of my own knowledge and, it called to testify, could and would competently

4 do so.

5      2.    Custom America is a fully independent subsidiary of Custom S.P.A., an

6 Italian corporation with its principal place of business in Parma, Italy.

7      3.    Custom S.P.A. owns approximately 90% of Custom America, which was

8 formed in 2011 for the purposes of permanently establishing a presence and

9 independent sales channels in the United States, which it has done.

10      4.    Custom S.P.A. does not conduct any banking in California, and it is not

11 liable for any of Custom America's debts.

12      5.    Custom S.P.A. is not registered to do business in California; has no

13 registered agent for service of process; has no offices or employees in California; and

14 pays no California state taxes.

15      6.    Custom S.P.A. has no partners or customers in California.  Custom S.P.A.

16 does not solicit, negotiate with, or contract with any customers in California.

17      7.    Custom S.P.A. engaged no employees and conducted no banking in

18 California, and had no involvement in the decision-making process that resulted in any

19 of its global products landing in California.

20      8.    Custom S.P.A. never communicated with Mr. Panchenko regarding any

21 matter, let alone matters as they relate to California and this litigation.

22      9.    Custom S.P.A. does not decide which products or markets to develop

23 and/or pursue in the United States.

24

25

26

27

28

1    I declare under penalty of perjury under the laws of the United States of

2 America that the foregoing is true and correct.

3

4

5    Executed the 29 day of January, 2020.

6

7

8                                              By: _____

                                                  ROSANNA SARCINA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**3**